UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL T. STACEY, et al.,

          Plaintiffs,                    Case No. 10-13769
                                               HON. GEORGE CARAM STEEH

vs.


VISTA MORTGAGE CORPORATION, et al.,

          Defendants.

_____/

ORDER GRANTING DEFENDANT WELLS FARGO'S MOTION FOR SUMMARY
JUDGMENT [#8] AND DISMISSING ACTION

I.    Introduction

    Plaintiffs, Michael T. Stacey and Wendy E. Duthie Stacey ("plaintiffs"), filed the

instant action against defendants Vista Mortgage Corporation ("Vista")[1] and Wells Fargo

Bank, N.A. d/b/a Wells Fargo Home Mortgage ("Wells Fargo") seeking damages and

equitable relief relative to real property located at 15335 Lakeside, Plymouth, Michigan.

---

    [1] As of this date, plaintiff has failed to serve defendant Vista with a summons and copy of the complaint. This action was commenced in the Wayne County Circuit Court, Detroit, Michigan on or about August 17, 2010. Defendant Wells Fargo removed the action to this court on September 21, 2010.
    After a case is removed to the district court, "federal law governs, and defects in service can be cured in accordance with federal rules of procedure." Cowen v. Am. Med. Sys., 411 F. Supp. 2d 717, 720 (E.D. Mich. 2006). When a case is removed from state court, service must occur within one hundred and twenty (120) days from the date of removal. Id. (citing Bruley v. Lincoln Property Co., N.C., Inc., 140 F.R.D. 452, 453 (D.C. Col. 1991). Therefore, the summons is expired and this action is dismissed without prejudice as to defendant Vista.

Defendant Wells Fargo now moves for summary judgment and the parties have fully briefed their respective positions.  A hearing was held on December 21, 2011.  Plaintiff failed to appear at the hearing.

     II.    <u>Factual Background</u>

On December 19, 2002, plaintiffs purchased real property commonly known as 15225 Lakeside Drive, Plymouth, Michigan for the sum of $745,000.00.  The plaintiffs took out a residential mortgage loan in the amount of $500,000.00 from Huntington Mortgage Company.  At this time the property appraised for $745,000.00.  This mortgage was discharged in October of 2007.

On September 12, 2007, plaintiffs refinanced and took out a residential mortgage loan in the amount of $400,000.00 from defendant Vista.  In connection with the loan, plaintiffs executed a HUD-1 Settlement Statement, and an Acknowledgment of Receipt of Notice of Right to Cancel and Federal Truth in Lending Disclosure, which specified that each plaintiff received a copy of (1) Federal Truth in Lending Disclosure, and (2) Notice of Right to Cancel.  Additionally, Vista required plaintiffs to obtain an appraisal of the property, which was performed by Alpay Onder of Priority Appraisal, L.L.C.  The property appraised for $850,000.00.

Defendant Wells Fargo began servicing the loan in February of 2008.  Plaintiffs made timely payments on their loan for nearly three years.  In January of 2010, plaintiffs contacted Wells Fargo seeking a loan modification.  On March 2, 2010, Wells Fargo denied their request for modification "because [it] was unable to get [the plaintiffs] to a modified payment amount that [they] could afford per the investor guidelines on [their] mortgage."  <u>See</u> Mot. for Summ. J., Ex. 16.  Following this decision, plaintiffs, through counsel,

2:10-cv-13769-GCS-MJH   Doc # 16   Filed 12/21/11   Pg 3 of 11   Pg ID 502

contacted Wells Fargo seeking to settle the debt owed with a short-payoff of the loan of $230,000.00, citing Mr. Stacey's pending criminal conviction for wire fraud in connection with his residential mortgage loan business as the basis for the plaintiffs financial difficulties.[2] Id., Ex. 17.  Wells Fargo rejected plaintiffs' offer to pay $230,000.00 to settle the debt on the outstanding balance of $346,809.00 as "simply insufficient."  Id., Ex. 18.

The mortgage was assigned to Wells Fargo on November 23, 2010.  On November 29, 2010, Trott & Trott, foreclosure counsel for Wells Fargo, sent a letter to plaintiffs indicating that it had been referred to foreclose the mortgage, and advising plaintiffs that the total indebtedness under the loan was $365,395.54.  The letter also advised plaintiffs of their right to opt-in to a meeting with Wells Fargo regarding loan modification.  The notice was also published.  Plaintiffs did opt-in and a meeting was held at Trott & Trott's office in March of 2011, however an agreement as to loan modification could not be reached.

III.    Law & Analysis

A.    Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient

_____

[2] On April 2, 2010, plaintiff Michael Stacey was indicted on one count of wire fraud for activities related to First Mortgage Fund, a company run by Stacey.  Plaintiff entered a plea and was sentenced on November 29, 2011 to thirteen months imprisonment, restitution and twenty-four months supervised release.

-3-

administration of justice.  The procedure is not a disfavored procedural shortcut.  <u>Celotex</u>

<u>Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>see</u> <u>also</u> <u>Cox v. Kentucky Dept. of Transp.</u>, 53

F.3d 146, 149 (6th Cir. 1995).

      The standard for determining whether summary judgment is appropriate is "'whether

the evidence presents a sufficient disagreement to require submission to a jury or whether

it is so one-sided that one party must prevail as a matter of law.'" <u>Amway Distributors</u>

<u>Benefits Ass'n v. Northfield Ins. Co.</u>, 323 F.3d 386, 390 (6th Cir. 2003) (quoting <u>Anderson</u>

<u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable

inferences must be construed in the light most favorable to the non-moving party.

<u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Redding</u>,

241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of <u>some</u> alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson</u>

<u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original); <u>see</u> <u>also</u> <u>National</u>

<u>Satellite Sports, Inc. v. Eliadis, Inc.</u>, 253 F.3d 900, 907 (6th Cir. 2001).

      If the movant establishes by use of the material specified in Rule 56(c) that there is

no genuine issue of material fact and that it is entitled to judgment as a matter of law, the

opposing party must come forward with "specific facts showing that there is a genuine issue

for trial." <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 270 (1968); <u>see</u> <u>also</u> <u>McLean</u>

<u>v. 988011 Ontario, Ltd.</u>, 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in

the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence

supporting the non-moving party.  <u>Anderson</u>, 477 U.S. at 248, 252.  Rather, there must be

evidence on which a jury could reasonably find for the non-movant.  <u>McLean</u>, 224 F.3d at

800 (citing <u>Anderson</u>, 477 U.S. at 252).

      B.     <u>Wells Fargo's Motion for Summary Judgment</u> [3]

      1.     <u>Fraudulent Misrepresentation (Count II)</u>

In order to establish a claim for fraudulent misrepresentation, plaintiffs must demonstrate: (1) that the defendant made a material representation, (2) that was false, (3) that he knew was false, or that was made recklessly, without any knowledge of its truth, (4) that he made it with the intention that plaintiff would act upon it, and (5) the plaintiff acted in reliance upon it, and (6) suffered damages.  See <u>Hi-Way Motor Co</u>. v. <u>Internat'l Harvester Co.</u>, 398 Mich. 330, 336; 247 N.W. 2d 813 (1976).  Wells Fargo argues that plaintiffs' claim for fraudulent misrepresentation should be dismissed for various reasons, specifically: (1) Wells Fargo cannot be held liable as a mortgage assignee, (2) this claim is barred by the parties' contract, (3) to the extent this claim relies on oral representations, the claim fails under the statute of frauds and (4) plaintiffs cannot establish reasonable reliance.

Plaintiffs appear to abandon their allegations that Wells Fargo is liable for alleged representations made at the time of the loan origination.  The evidence demonstrates that Wells Fargo was not a party to the original loan transaction, as reflected in the Note, Mortgage, and HUD-1 statements which show defendant Vista as the lender.  To the extent defendant Vista committed misconduct during the loan origination, such conduct cannot be imputed to Wells Fargo as the assignee of the mortgage.  See <u>Swarich</u> v. <u>OneWest Bank,</u>

---

[3] Counts I, VI and VII apply to defendant Vista only, which is a dismissed defendant, <u>see</u> n.1, <u>supra</u>, and plaintiffs voluntarily dismissed counts III (Violation of Mortgage Brokers, Lenders and Servicer Licensing Act) and VIII (Accounting).

FSB, No. 09-13346, 2009 WL 4041947, at *5 (E.D. Mich. Nov. 20, 2009) (granting the defendant's motion to dismiss because the alleged misrepresentations were made by an employee of the original lender, and not by any employee of the defendant company, the current holder of the mortgage.)   Thus, reliance upon any alleged misrepresentations made during the loan origination cannot support plaintiffs' fraudulent misrepresentation claim against Wells Fargo.

Plaintiffs' fraudulent misrepresentation claim apparently relies upon purported statements made by unidentified employees of Wells Fargo that "its only intention in helping plaintiffs was so they could keep their home."  Plaintiffs maintain that these representations were false because Wells Fargo has no intent to modify plaintiffs' loan.  Plaintiff Michael Stacey testified at his deposition that "I was told that I could not qualify for a loan modification because my mortgage payment was being paid" and "the only way they would consider a loan modification is if I stopped making the payments and screwed everything up."

Wells Fargo argues that plaintiffs' fraudulent misrepresentation claim fails because any duty owed to plaintiffs arose solely out of the parties' contractual relationship, and Michigan law precludes tort actions where a contractual agreement exists.  See Sherman v. Sea Ray Boats, Inc., 251 Mich. App. 41, 52; 649 N.W.2d 783 (2002).  "Michigan case law expressly provides that an action in tort may not be maintained where a contractual agreement exists, unless a duty, separate and distinct from the contractual obligation, is established."  Id.

Relying on Green v. Benefit Mortgage Corp., No. 08-12968, 2009 U.S. Dist. LEXIS 1163, *20 (E. D. Mich. Jan. 8, 2009), plaintiffs argue that the existence of a contractual

relationship does not preclude altogether a tort-based theory of recovery. Id. Plaintiffs fail to recite the entire passage from Green, which states:

> As a general rule, a tort claim under Michigan law cannot rest upon the breach of contractual obligation. The existence of a contractual relationship does not altogether preclude a tort-based theory of recovery, but any such tort claim must rest upon a duty owed by the defendant to the plaintiff that is separate and distinct from the defendant's contractual obligations.

Id. at *20-21. The plaintiffs do not advise the court of the specific separate and distinct duty that Wells Fargo owed to plaintiffs. While plaintiffs could theoretically rely on the duties imposed by Michigan's foreclosure statute, see MICH. COMP. LAWS § 600.3204 et seq., this would not save plaintiffs' claim from summary judgment as a review of the evidence in the record demonstrates that Wells Fargo has complied with its duties under MICH. COMP. LAWS § 600.3205a, as discussed in section III(B)(3), infra.

Even if plaintiffs can establish that Wells Fargo failed to perform a duty separate and distinct from its duties owed under the parties' contractual agreement, plaintiffs have failed to address Wells Fargo's argument that the statute of frauds bars plaintiffs' claim. Specifically, Michigan law requires that certain types of agreements be reduced to a writing. See Crown Technology Park v. D&N Bank, F.S.B., 242 Mich. App. 538, 548; 619 N.W. 2d 66 (2000); see also, MICH. COMP. LAWS § 566.132(2). Michigan Compiled Laws § 566.132(2) states:

> (2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.

MICH. COMP. LAWS § 566.132(2)(a). Here, plaintiff's fraudulent misrepresentation claim

fails because plaintiff has presented no evidence that an authorized representative of Wells Fargo made promises to modify plaintiffs' loan and reduced such promises to a written agreement.[4]  Plaintiffs have not demonstrated that a genuine issue for trial remains as to their fraudulent misrepresentation claim, therefore Wells Fargo is entitled to summary judgment on this claim.

       2.      <u>Breach of Contract (Count IV)</u>

Wells Fargo argues that summary judgment in its favor on plaintiffs' breach of contract claim is required because, similar to plaintiffs' fraud claim, the alleged oral promises to modify the loan were never reduced to a written agreement and the statute of frauds bars recovery. <u>See</u> Mich. Comp. Laws § 566.132(2).   Additionally, there is no requirement in the mortgage that Vista or Wells Fargo modify the terms of plaintiffs' loan. Plaintiffs have failed to respond to Wells Fargo's argument that the statute of frauds bars their breach of contract claim.  Wells Fargo is entitled to summary judgment in its favor on plaintiffs' breach of contract claim.

       3.      <u>Michigan Compiled Laws § 600.3204 et seq. (Count V)</u>

Plaintiffs also allege that Wells Fargo failed to comply with Michigan's foreclosure by advertisement laws and they seek to prevent Wells Fargo from proceeding with foreclosure.[5]  "Foreclosure sales by advertisement are defined and regulated by statute.

---

[4]  The court declines to address Wells Fargo's last argument, specifically that plaintiffs cannot show reasonable reliance on the alleged misrepresentations because plaintiffs cannot reasonable rely on a promise that is unenforceable under the statute of frauds.

[5]  To the extent plaintiffs seek to set aside a foreclosure, there is nothing in the record before the court demonstrating that the property has in fact been foreclosed upon, nor that a sheriff's sale has occurred.

Once the mortgagee elects to foreclose a mortgage by this method, the statute governs the prerequisites of the sale, notice of foreclosure and publication, mechanisms of the sale, and redemption." <u>Senters</u> v. <u>Ottawa Sav. Bank</u>, FSB, 443 Mich. 45, 50; 503 N.W. 2d 639 (1993). Plaintiffs specifically claim that foreclosure proceedings were initiated without providing required notices under MICH. COMP. LAWS § 600.3205a. However, the evidence presented by Wells Fargo demonstrates that it has complied with the pre-foreclosure requirements set forth in MICH. COMP. LAWS § § 600.3205a.

On November 29, 2010, Trott & Trott, Wells Fargo's foreclosure counsel, sent plaintiffs a letter regarding their property and default under the loan. <u>See</u> Mot. for Summ. J., Ex. 22. A review of this letter confirms that it is in compliance with § 600.3205a because it identified the reason that the loan was in default, the amount due and owing under the loan, the names and other identifying information regarding the mortgage holder, identification of Trott & Trott, P.C. as the entity with authority to make agreements under § 600.3205b and 600.3205c, and advised the plaintiffs that they had fourteen days from the date the letter was sent to them to request a meeting to attempt modification of the loan to avoid foreclosure. <u>Id</u>. The letter also enclosed a list of housing counselors. <u>Id</u>. This letter was also published as required by § 600.3205a(4). <u>See</u> Mot. For Summ. J., Ex. 23. Plaintiff Michael Stacey testified at his deposition that he did request a loan modification meeting with Trott & Trott and the meeting was held in March of 2011. <u>See</u> Mot. For Summ. J., Ex. 4 at 60.

Plaintiffs have failed to come forward with evidence establishing that a genuine issue for trial exists on this claim. Wells Fargo is likewise entitled to summary judgment in its favor on this claim.

-9-

4.    Quiet Title (Count IX)

Plaintiffs maintain that title to their mortgaged property should be quieted in their names and that an order should be entered declaring they own the mortgaged property free and clear of the mortgage because "plaintiffs signed the mortgage and note by reason of defendants failing to disclose material facts, by making false and misleading statements."

Wells Fargo is also entitled to summary judgment on this claim.  When quieting title to land, "the plaintiff has the burden of proof and must make out a prima facie case of title. Once the plaintiff makes out a prima facie case, the defendants then have the burden of proving superior right or title in themselves."  Beulah Hoagland Appleton Qualified Pers. Residence Trust v. Emmet Co. Road Comm'n, 236 Mich. App. 546, 550; 600 N.W. 2d 698 (1999).  Here plaintiffs' ownership of the property has not changed; they are record holders of title to the property as foreclosure proceedings have been stayed and have gone no further than the loan modification meeting with Trott & Trott in March of 2011.  Further, plaintiffs bald assertion that fraud and deceit during the loan origination permits this court to quiet title in their name, notwithstanding Wells Fargo's absence as a party during loan origination, lacks any legal or factual support.   There is no basis in law for extinguishing Wells Fargo's security interest, therefore the court is without authority to grant plaintiffs relief.  Wells Fargo is entitled to summary judgment on this claim.

5.    Injunctive Relief (Count X)

Plaintiffs are not entitled to injunctive relief in the form of enjoining the foreclosure of their property.  An injunction is a form of relief; it is not a recognized cause of action. See Terlecki v. Stewart, 278 Mich. App. 644, 663; 754 N.W. 2d 899 (2008).  It is an extraordinary remedy that is granted only when "(1) justice requires it, (2) there is no

-10-

adequate remedy at law, and (3) there exists a real and imminent danger of irreparable injury." Head v. Phillips Camper Sales & Rental, Inc., 234 Mich. App. 94, 110; 593 N.W. 2d 595 (1999). Plaintiffs do not present any evidence or argument in their responsive brief demonstrating that a genuine issue for trial exists on any of their claims, therefore there is no basis upon which this court can grant plaintiffs an injunction without an underlying independent cause of action.

IV.    Conclusion

Wells Fargo's motion for summary judgment is GRANTED.

Wells Fargo is dismissed with prejudice.

Defendant Vista is dismissed without prejudice.

This action is dismissed.

SO ORDERED.

Dated:  December 21, 2011

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on December 21, 2011, by electronic and/or ordinary mail.

S/Marcia Beauchemin
Deputy Clerk